925 P.2d 399

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Robert Andrew AMERSON,
Defendant–Appellant.**

No. 21221.

Court of Appeals of Idaho.

Sept. 10, 1996.

Petition for Review Denied Nov. 8, 1996.

Robert Andrew Amerson, Boise, pro se appellant.

Alan G. Lance, Attorney General; Thomas P. Watkins, Deputy Attorney General, Boise, for respondent.

WALTERS, Chief Judge.

Robert Amerson was found guilty by a jury of three crimes: rape, I.C. § 18–6101(3); forcible sexual penetration with a foreign object, I.C. § 18–6608; and robbery, I.C. § 18–6501(1). The district court imposed determinate sentences of twenty-five years each for the rape and forcible penetration offenses and imposed a ten-year determinate sentence for the robbery. The court ordered that the sentences be served consecutively.

On appeal, Amerson raises several issues. First, he contends that the charges against

him should have been dismissed at the preliminary hearing because the statute of limitation applicable to the prosecution of felonies had expired. Second, he asserts that the charges should have been dismissed due to delay by the state in prosecuting the case. Third, Amerson argues that the district court erred by denying his motion for an acquittal on the ground that the state had failed during the jury trial to prove "venue." Fourth, he submits that the district court erred by denying his motion in limine with regard to DNA evidence. Fifth, he claims error with regard to the district court's instructions to the jury, asserting that: (a) the jury was not properly instructed about the statute of limitation issue; (b) the district court erred in refusing to give Amerson's requested instructions on lesser included offenses; and (c) the district court erred by not instructing the jury concerning the scientific evidence presented at trial. Sixth, Amerson asserts that the state withheld exculpatory evidence. Finally, he argues that the district court abused its sentencing discretion.

We affirm the judgments of conviction. However, we modify the sentences imposed, allowing the sentences for rape and for forcible penetration to be served concurrently and permitting an opportunity for parole on the ten-year sentence for the robbery.

## BACKGROUND FACTS AND PROCEDURE

In the early morning hours of December 18, 1986, the victim, a 62-year-old woman who lived in Richfield, Idaho, was on her way to work at the Tupperware plant in Jerome. As she drove her 1976 Pontiac automobile from Main Street in Richfield onto the highway, heading south toward Shoshone where she intended to meet a co-worker, Linda, to travel with to Jerome, she noticed another car start up and proceed to leave Richfield ahead of her. She followed this other car for a way and then passed it at the Dietrich cutoff because it was traveling about 40 miles per hour and she needed to meet Linda in Shoshone at a certain time.

The other car then drew up close behind her two or three times and its headlights shifted to bright and back to dim. As the two vehicles proceeded down the highway, the following vehicle then passed the victim and she noticed that it was a maroon "sports car." Its license plate was covered with mud or grease and was illegible. The maroon car then pulled across the highway and stopped, blocking the victim's path.

The driver of the maroon car, later identified as Amerson, got out of his vehicle and approached the victim's Pontiac. She partially unrolled her window and he asked her the way to Twin Falls. Their conversation was interrupted when another car, heading back toward Richfield, stopped near the two vehicles. Amerson talked to the other driver, evidently informing the other driver that there was no problem, and the other car left.

Amerson then returned to the victim's Pontiac. He put his hands on the window, forced the window down and unlocked the door. As he opened the door, the Pontiac's dome light came on and the victim got a good look at her assailant. He then opened her door and removed the victim's seat belt. He put his hand over her nose and mouth and pushed her onto the seat. He took the shoe off her left foot, threw the shoe onto the backseat and pulled her left leg out of her pants. He opened the glove compartment and removed a plastic bag used by the victim to protect the upholstery in her car. He wrapped the plastic bag around a flashlight found on the seat of the car and inserted it into the victim's vagina. He then removed the flashlight and raped the victim.

After the rape, he asked the victim her name, but she refused to reveal it to him. He found the name on her automobile registration and told her he would remember it. He also warned her that if she told anyone about the incident he would kill her. He found her wallet in a bag on the floor of the car and took some bills out of it, between $5 and $10. He then got into his own car and drove off toward Richfield.

When the victim saw the direction her assailant took, she decided not to go back to Richfield, but went on to Shoshone. When she arrived in Shoshone, her co-worker, Linda, was not there, so she continued on to the Tupperware plant. There she met Linda

and told her what had happened. The victim was not acquainted with Amerson and did not know the identity of the person who attacked, raped and robbed her.

The victim was taken to a local hospital where she was examined by medical personnel. The attending doctor and nurse prepared a sex crime kit including swabs of the victim's oral, vaginal and anal areas for analysis by the state crime laboratory. The victim was then interviewed by two sheriff's deputies from Lincoln County and fingerprints were obtained from the inside and the outside of the window of the victim's Pontiac. The Lincoln County sheriff turned these fingerprints over to the state Department of Law Enforcement for comparison with fingerprints in the Department's records. The sex crime kit, the flashlight and two articles of the victim's clothing—her panties and slacks—were submitted to the state crime laboratory for analysis.

Later, state officers went to Lincoln County to recover more evidence and to determine if additional fingerprints could be developed. As a result, a fingerprint was also obtained from the plastic bag in which the flashlight had been placed. The state laboratory analysis subsequently determined the existence of seminal fluid on swabs taken from the victim's orifices and upon the items of clothing submitted for analysis. The laboratory was not able to determine the blood type of the depositor of the semen.

In 1989, the state implemented an automated fingerprint identification system and, in 1990, notified the sheriff of Lincoln County that a number of similar points of identification had been found when the fingerprints submitted by the sheriff in this case were compared with fingerprints of Robert Amerson located in the state records. As a result, Amerson was taken into custody in May, 1990, and another set of his fingerprints were obtained in the booking process. These fingerprints were then sent to the state for comparison with the fingerprints obtained

from the victim's Pontiac. Also, a sample of Amerson's blood was obtained and sent to the FBI, together with the clothing and sex crime kit prepared with respect to the victim, for a DNA analysis.

On February 2, 1993, a criminal complaint was filed in the district court for Lincoln County charging Amerson with rape, forcible penetration with a foreign object and robbery.[1] Following a preliminary hearing in the magistrate division, Amerson was bound over to the district court to answer to the charges. He entered pleas of not guilty, and the district court scheduled the case for a jury trial.

The trial commenced on September 13, 1993. Due to the passage of time since the attack on the victim, the prosecutor presented evidence showing Amerson's absence from the state of Idaho, and the question of whether the charges were barred from prosecution by the statute of limitation was submitted to the jury to determine. To otherwise establish Amerson's culpability, the victim identified Amerson in court as the person who had attacked her on December 18, 1986. The supervisor of the latent fingerprint section of the bureau of criminal identification for the state Department of Law Enforcement testified concerning the fingerprint analysis. He testified that a fingerprint obtained from the outside of the window of the victim's Pontiac matched the fingerprint of Amerson's left ring finger; that a fingerprint obtained from the inside of the window of the same vehicle matched the fingerprint of the middle finger of Amerson's right hand; and that the fingerprint obtained from the plastic bag in the victim's car matched the fingerprint of Amerson's left index finger. A DNA specialist testified and provided demonstrative evidence showing how Amerson's DNA pattern matched the DNA pattern of the depositor of the seminal fluid on the articles submitted to the FBI for analysis.

---

1. According to the arguments on this appeal, another complaint had previously been filed but was dismissed on the ground that Amerson's prosecution was barred by the statute of limitation applicable to felonies. Evidently, the prosecutor subsequently concluded that Amerson's ab-

sence from the state of Idaho could be proved in order to toll the limitation under I.C. § 19–404. The complaint was then filed in February, 1993, containing detailed allegations relating to Amerson's absence from Idaho during various dates between 1987 and 1992.

The jury found Amerson guilty of all charges. The district court sentenced Amerson to the custody of the state Board of Correction pursuant to the sentencing statute, I.C. § 19–2513, as it existed in 1986 when the crimes were committed. The court imposed a determinate sentence of twenty-five years for the rape, a determinate sentence of twenty-five years for the forcible penetration offense, and a determinate sentence of ten years for the robbery. The court further ordered that the sentences be served consecutively. This appeal ensued.

## DISCUSSION

### I. Motion to Dismiss

As his first issue on appeal, Amerson assigns error to the refusal of the presiding judge to grant Amerson's motion for dismissal during the preliminary hearing held to determine if Amerson should be bound over to the district court to answer to the charges. The dismissal motion was predicated upon the defense that prosecution of the charges against Amerson was barred by the statute of limitation.[2] Amerson argues that the magistrate applied an improper standard of proof (probable cause) to the evidence submitted by the parties on the question of whether the limitation period had expired or whether the state had shown that the limitation period was sufficiently tolled to permit Amerson's prosecution.[3] He argues that if the magistrate had applied the proper standard, i.e., a preponderance of the evidence, the charges would have been dismissed.

After due consideration, we conclude that we need not resolve the standard of proof question, nor whether the dismissal motion should have been granted by the magistrate.

Our Supreme Court recently has noted that where a defendant receives a fair trial, errors connected with the preliminary hearing will afford no basis for disturbing the judgment of conviction. *State v. Pratt,* 125 Idaho 546, 556, 873 P.2d 800, 810 (1993), citing *State v. Mitchell,* 104 Idaho 493, 500, 660 P.2d 1336, 1343, cert. denied, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983). From our review of the record, we conclude that Amerson received a fair trial and was found guilty upon sufficient evidence to sustain the verdict. *State v. Streeper,* 113 Idaho 662, 747 P.2d 71 (1987); *State v. Walker,* 109 Idaho 356, 707 P.2d 467 (Ct.App.1985); *State v. Maylett,* 108 Idaho 671, 701 P.2d 291 (Ct. App.1985). In accordance with *Pratt,* we hold that any error connected with the magistrate's decision to deny Amerson's motion to dismiss essentially became moot upon the jury's verdict finding Amerson guilty beyond a reasonable doubt.

### II. Delay in Prosecuting

Next, aside from the statute of limitation question, Amerson asserts that the charges against him should have been dismissed due to delay by the state in prosecuting the case. He relies on the four-part balancing test relating to the right to a speedy trial which is set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This test considers the factors of (1) the length of the delay in question; (2) the reasons for the delay; (3) the assertion, if any, by the defendant of his right to a speedy trial; and (4) the prejudice to the defendant from the alleged delay.

It appears from the record in this case that no motion for dismissal on the grounds of prejudicial delay resulting from the al-

---

**2.** In 1986, when the crimes in this case were committed, I.C. § 19–402 provided in relevant part that a prosecution for any felony other than murder or any felony committed upon or against a minor child must be commenced by the filing of the complaint or the finding of an indictment within three years after its commission. In 1992, the statute was amended to provide a five-year limitation period. Amerson argues that this amendment violated his right to due process. However, that due process issue was never submitted to the district court for resolution in order to preserve the question for appellate review.

*State v. Lavy,* 121 Idaho 842, 828 P.2d 871 (1992). Furthermore, while Amerson couches his argument in terms of due process, his position in actuality is simply an *ex post facto* argument which uniformly has been rejected by the courts. *State v. O'Neill,* 118 Idaho 244, 796 P.2d 121 (1990).

**3.** The tolling statute, I.C. § 19–404, provides that "no time during which the defendant is not an inhabitant of, or usually resident within, the state is part of the limitation."

leged denial of a speedy trial was ever submitted to the district court. Consequently, no facts were developed for the purpose of applying any of the components in the *Barker–Wingo* balancing test, and no ruling was made by the district court in this regard which can be reviewed on appeal. It is elementary that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error. *State v. Fisher,* 123 Idaho 481, 849 P.2d 942 (1993), *citing Dunclick, Inc. v. Utah–Idaho Concrete Pipe Co.,* 77 Idaho 499, 502, 295 P.2d 700, 702 (1956); *State v. Medina,* 128 Idaho 19, 909 P.2d 637 (Ct.App.1996). Accordingly, this issue need not be addressed further.

### III. Motion for Acquittal

■ Amerson asserts that the district court erred by denying his motion for acquittal made at the conclusion of the state's case in chief on the ground that the state had failed to prove venue. The motion, made orally, asked for a dismissal of the case because the state had presented no evidence to establish that the crimes were committed in Lincoln County, although there was evidence that the crimes were committed within the state of Idaho and there was considerable evidence showing the involvement of the Lincoln County law enforcement officers in the investigation of the crimes and the apprehension of Amerson. After hearing arguments, including the prosecutor's position that venue did not need to be proved because it was not an element of a crime, the district court denied the motion to dismiss. We hold that the district court did not err.

■ Chapter 3 of title 19 of the Idaho Code contains the statutory provisions relating to venue in criminal actions. From statehood until 1986, these statutes focused on the county in which various criminal actions must be brought, addressing that location in terms of "jurisdiction" of the forum. Thus it appeared necessary to prove that the alleged crime was committed in a particular county, in order to satisfy jurisdictional requirements. However, in 1986 the legislature substantially revised this chapter, inserting the word "venue" in lieu of the word "jurisdiction" in appropriate places throughout the statutes. 1986 *Idaho Sess. Laws,* ch. 289, p. 727. The result is that the various criminal actions are to be brought in particular counties as a matter of the appropriate venue, but not because of any "jurisdictional" requirement. So long as the prosecution proves that the crime occurred within the state of Idaho, the precise location of the crime within any particular county in Idaho is not required as an element to establish that a crime has been committed by the accused. *See, e.g., State v. Doyle,* 121 Idaho 911, 828 P.2d 1316 (1992). Indeed, the 1986 legislation inserted this concept into section 19–301 by adding two important provisions. The first, added to subsection 1 of 19–301, reads:

> Evidence that a prosecutable act was committed within the state of Idaho is a jurisdictional requisite, and proof of such must be shown beyond a reasonable doubt.

The second provision was codified as subsection 2 of 19–301, and reads:

> (2) Venue is nonjurisdictional. Proof that venue is proper under this chapter is satisfied if shown by a preponderance of the evidence.

■ Thus, under section 19–301(1), the prosecution must allege and prove, beyond a reasonable doubt, that the interdicted act constituted a crime and that it occurred in Idaho. Proof that the crime occurred in any particular county does not come into play except where there appears a dispute about the county in which the criminal action must be prosecuted. As a matter of course, such disputes may be forestalled by application of Idaho Criminal Rule 19 which provides that "Except as otherwise permitted by statute or these rules, the prosecution shall be had in the county in which the alleged offense was committed." But the fact that the action is commenced in the wrong county does not mean that the state will be unable to prove the guilt of the accused. It simply means that, if a dispute arises as to the proper venue for prosecution of the action, resolution of the dispute may include transfer of the action to the appropriate location.[4] The

---

4. In addition to I.C.R. 19, chapter 18 of title 19    and I.C.R. 21 contain provisions relating to the

proper location for the proceeding can be established by a preponderance of the evidence. Once the venue question is resolved, then the prosecution of the criminal action may proceed.

Here, Amerson did not seek any change of venue after the action was filed in Lincoln County. Accordingly, venue was not in question and it was unnecessary for the prosecution to prove that the crime was committed in Lincoln County, as distinguished from proof that the crime otherwise occurred somewhere within the state of Idaho.[5] It follows that the district court did not err in denying Amerson's motion to dismiss for failure of the state to provide evidence of venue.

## IV. Motion in Limine

Amerson contends, with regard to the DNA evidence, that the district court erred by not granting Amerson's motion in limine to prevent the introduction of the evidence. Amerson's motion asserted that the DNA test "does not meet the Frye Test,"[6] and he presented testimonial evidence in support of his motion, questioning the reliability of the DNA evidence. The motion was denied and the state was later allowed to introduce the DNA evidence during the trial, through the testimony of a special agent assigned to the DNA analysis unit at the FBI laboratory in Washington, D.C., and who conducted the DNA tests used in this case.

■ The district court did not err in rejecting Amerson's contention that the DNA evidence failed to meet the Frye test. It is now settled that admission of DNA evidence in a rape case is governed by Idaho Rule of Evidence 702[7] and not by the Frye test. State v. Faught, 127 Idaho 873, 908 P.2d 566 (1995).

■ Amerson also poses several arguments relating to the reliability of the DNA evidence which, he submits, rendered the evidence inadmissible under I.R.E. 702. We find it unnecessary to address these arguments, however, because we conclude that even if the admission of the DNA evidence was in error, the error was harmless. This is true because other overwhelming evidence, including several of his fingerprints on the victim's automobile and on the plastic bag used in the attack, proves that Amerson was guilty of the crimes. Our Supreme Court recently noted that

> Idaho Criminal Rule 52 provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." In determining whether an error has affected substantial rights or is harmless, we ask whether it appears, beyond a reasonable doubt, that there was no reasonable possibility that the error contributed to the conviction.

State v. Roy, 127 Idaho 228, 231, 899 P.2d 441. 444 (1995) citing State v. Sharp, 101 Idaho 498, 507, 616 P.2d 1034, 1043 (1980) and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See also, State v. Whiteley, 124 Idaho 261, 858 P.2d 800 (Ct.App.1993). Applying the ruling in Roy to Amerson's case, we conclude that beyond a reasonable doubt there was no reasonable probability that any error in the admission of the DNA evidence contributed to Amerson's conviction of the crimes charged. Accordingly, we are not persuaded

---

process for determining venue questions. None of these provisions indicate that the location of the crime, other than within the state of Idaho, has any bearing on establishing that a crime in fact has been committed.

5. Later, in the instructions to the jury, the district court outlined the elements of each of the charges which the state was required to prove beyond a reasonable doubt. Consistent with the Idaho Pattern Criminal Jury Instructions (ICJI), the enumerated elements did not include the name of the county where the alleged crimes were committed. With respect to identifying the location of the crimes, these instructions only required that the prosecution prove that the par-

ticular crime was committed in the state of Idaho. Amerson raises no challenge to these instructions in this appeal.

6. See Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).

7. Idaho Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

that the district court erred in denying Amerson's motion in limine.

## V. Jury Instructions

Next, Amerson raises three issues with regard to jury instructions. First, he contends that the jury was not properly instructed about the statute of limitation issue. Second, he assigns error to the district court's refusal to give certain instructions on lesser included offenses which were requested by Amerson. Third, Amerson argues that the district court failed to give to the jury explanatory instructions concerning the scientific evidence presented at trial. We will address each of these issues in turn.

### A. Statute of Limitation

■ In the information filed against Amerson, the prosecutor listed eight separate periods where it was alleged that Amerson was outside of the state of Idaho between the time the offenses in this case were committed and when criminal charges were filed against him. At trial, the state presented evidence on only four of these periods to show that Amerson had resided at various times in Utah and California, and had been incarcerated in a penitentiary in Montana. The evidence presented on these four periods was sufficient to bring Amerson's prosecution within the statute of limitation. Amerson argues that the jury should have been instructed that the state had to prove all eight periods beyond a reasonable doubt. Because there was no evidence presented on four of these periods, Amerson argues that the state failed to prove each material element of the offense, and therefore the verdict should be overturned.

We find no merit to Amerson's argument. Although it is true that the state was required to prove the tolling of the statute of limitation, and that the level of proof was proof beyond a reasonable doubt,[8] it was not necessary for the state to prove each event that was alleged to have tolled the statute.

All that was required was that the state prove that the statute had been tolled for a sufficient length of time to permit prosecution within the time allowed by I.C. § 19–402.

■ Amerson poses an additional argument with regard to the tolling issue, concerning the state's burden of proof. He asserts that the district court failed to properly instruct the jury that the state had the burden to prove beyond a reasonable doubt that the statute of limitation had been tolled. Amerson acknowledges that the court informed the jury through a special verdict form that the state must establish beyond a reasonable doubt that the statute of limitation was satisfied, i.e., that the defendant was absent from the state for a sufficient period to keep the statute of limitation in effect. Amerson argues that this information, however, should have been provided in a separate instruction rather than by a special verdict form.

The position espoused by Amerson was rejected in another case decided recently by our Supreme Court while Amerson's appeal was pending. In *Le'Gall v. Lewis County*, 129 Idaho 182, 923 P.2d 427 (1996), the Court held that a trial court is not required to include as a separate instruction the information covered in a special verdict form. Accordingly, we hold that Amerson has failed to establish error by the district court with respect to the instructions given on the statute of limitation question.[9]

### B. Lesser Included Offenses

■ Prior to trial, Amerson requested that the district court instruct the jury on certain lesser offenses included in the crimes of rape and of forcible penetration with a foreign object. These lesser offenses were: assault, battery, assault with the intent to commit rape, battery with the intent to commit rape, and aggravated assault. After state had completed the presentation of its evidence, the district judge informed the par-

8. See Idaho Pattern Criminal Jury Instruction (ICJI) No. 1501 (1995).

9. For guidance in future cases, however, we note that—subsequent to the trial in this case—the pattern jury instruction committee has recommended that the jury not be required by special verdict form to find whether the statute of limitation defense was established, when that defense is asserted. *See COMMENT* to ICJI 1501 (1995).

ties that he had decided not to give the lesser included offense instructions. During the jury instruction conference, Amerson's counsel remarked to the judge: "I don't have any objections for the record on the instructions of mine that you didn't give."

In its argument on appeal, the state submits that under I.C. § 19–2132 the trial court has a duty to instruct the jury on lesser included offenses only when such offenses are supported by any reasonable view of the evidence. *See State v. Tribe*, 123 Idaho 721, 852 P.2d 87 (1993). Indeed, our Supreme Court has said that when a trial court is requested to give an instruction on a lesser included offense, it must look to *all* of the evidence presented at the trial to determine if there is a reasonable view of the evidence to support the requested instruction. *State v. Thomasson*, 122 Idaho 172, 175, 832 P.2d 743, 746 (1992). Here, the state argues that no reasonable view of the evidence in this case justified Amerson's requested instructions on lesser offenses. We agree.

The testimony was undisputed that the rape, the forcible penetration with a foreign object and the robbery took place. Amerson's defense was not based on the degree of these crimes, but rather that he was not the one who committed them and that he should be free from prosecution also because the statute of limitation had expired. The record demonstrates that there was no testimony or evidence presented that would support the giving of the lesser included offenses instructions. It is well settled that where a reasonable view of the evidence would not support a finding that the defendant is guilty of a lesser included offense, the trial court is not required to give an instruction on the lesser offense, despite the defendant's request that it do so. *State v. Seiber*, 97 Idaho 140, 540 P.2d 802 (1975); *State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973); *State v. Clokey*, 83 Idaho 322, 364 P.2d 159 (1961); *State v. Elsen*, 68 Idaho 50, 187 P.2d 976 (1947).

Furthermore, before the jury could have considered a lesser offense, the jury would have had to find that Amerson was not guilty of the charged offense within which the lesser offense was included, under I.C. § 19–2132. The effect of this statute is that the trial court is required to instruct the jury on lesser included offenses requested by either party where a reasonable view of the evidence presented in the case would support a finding that the defendant committed the lesser included offense, but did not commit the crime charged. *State v. Fodge*, 121 Idaho 192, 824 P.2d 123 (1992); *State v. Croasdale*, 120 Idaho 18, 813 P.2d 357 (Ct.App. 1991). In light of the record in this case, we find no error in the district court's refusal to give Amerson's requested instructions on lesser included offenses.

## C. Instruction Concerning Scientific Evidence

Amerson next asserts that the district court erred by not instructing the jury concerning the "scientific evidence" presented at the trial. He asserts that this evidence was complex and confusing, "causing possible prejudice to the Appellant."

Amerson does not identify the evidence which he believes to be complex or confusing contained among the various items of "scientific" evidence, both demonstrative and testimonial, which were introduced by the state and by the defense. Nor does he suggest any proposed instruction that should have been given to the jury and which would not be improper as a comment upon the evidence. He simply maintains that "by failing to instruct the jury, it would be impossible to determine what weight or prejudice this evidence had on the ultimate outcome of this trial," and concludes that the failure to give the instruction violated his right to due process under the United States and Idaho Constitutions.

Without a request for such an instruction, the district court was not obligated to give the instruction *sua sponte*. *State v. Eastman*, 122 Idaho 87, 831 P.2d 555 (1992); *see also* I.C. § 19–2132(a). Furthermore, Amerson does not cite any authority or present any cogent argument supported by authority to sustain his due process contention. It is a well-settled axiom of appellate practice that issues posed without citation to authority or without presentation of argument supported by authority, demonstrating the

soundness of the principle urged, will not be considered.[10] *City of Sun Valley v. Sun Valley Co.*, 128 Idaho 219, 223, 912 P.2d 106, 110 (1996); *Langley v. State of Idaho, Industrial Special Indemnity Fund*, 126 Idaho 781, 784, 890 P.2d 732, 735 (1995). Amerson's generalized reference to the due process provisions of the two constitutions does not insulate his issue from the application of this rule.

We therefore reject Amerson's claim that the district court committed any error with respect to the instructions given to the jury.

## VI. Exculpatory Evidence

■ Amerson next contends that the state withheld exculpatory evidence which would have been beneficial to him had the state disclosed the existence of this evidence, and that the withholding of that evidence denied Amerson due process. The evidence in question is information apparently available from Amerson's former wife.

■ Amerson's argument involves the following facts and events. One of the time periods when Amerson was absent from the state of Idaho, upon which the prosecution offered proof to toll the statute of limitation, was from November 1, 1987, until August 8, 1988, when Amerson resided with his wife in Utah. This evidence was presented by testimony from the Amersons' landlord from Murray, Utah. In response to the landlord's testimony, Amerson called his stepfather to testify that Amerson lived with his stepfather in Howe, Idaho, from the middle of April, 1988, until October, 1988. Amerson has attached as an exhibit to his appellate brief a copy of a purported affidavit from his former wife. The affidavit evidently was executed on November 16, 1995, two years after the trial in this case.[11] In this document, the affiant states that while she lived in Murray, Utah, between November 1987 and August 1988, Robert Amerson stayed with her from time to time until May 15, 1988, when he left to move to Idaho.[12] Amerson argues that this information from his former wife should have been obtained by the prosecution in its investigation of Amerson's whereabouts. He then builds on this premise by submitting that failure to discover this information and to relay it to him affected the outcome of his case because—if he had been able to present his former wife's testimony to the jury, or at least to the magistrate at his preliminary hearing—he would have been acquitted on the ground that the statute of limitation had expired.

Once again, we are presented with a contention that was never submitted to the district court for resolution. Without commenting on the merits of Amerson's argument, we decline to usurp the role of the district court by deciding in the first instance and upon an undeveloped record whether the state withheld any evidence from Amerson that was not otherwise known by or available to him or whether the existence of the evidence would have made any difference in the proceeding. *State v. Fisher*, 123 Idaho 481, 485, 849 P.2d 942, 946 (1993); *State v. Medina*, 128 Idaho 19, 909 P.2d 637 (Ct.App.1996).

## VII. Sentence Review

We turn now to the sentencing issue. Each of the crimes for which Amerson was

---

10. Our Supreme Court recently characterized this rule as a form of "waiver" of the issue raised. The Court said: "A party waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking." *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

11. We do not approve of the inclusion of such materials within the brief of a party without a proper motion for augmentation under the appellate rules. While the state has not filed a motion to strike the affidavit, nonetheless, we are not bound to give the document any consideration inasmuch as it was not part of the record developed in and taken into account by the district court.

12. Interestingly, the affidavit recites: "That on May 15th, 1988, Robert left permanently to move back to Howe, Idaho, to live with his father and work." The affiant does not purport to state of her own knowledge that she was aware of when, if ever, Amerson actually arrived in Howe, Idaho. As noted, she only states that he left her home in Murray, Utah, on May 15, 1988. Of course, that date was about a month *later* than the date identified by the testimony of Amerson's stepfather as to when Amerson began living in Howe, Idaho. In light of our disposition of this issue, we need not decide which of these two witnesses on Amerson's behalf more accurately espouses the facts or which of them may be considered as impeaching the other.

found guilty are punishable by commitment of the offender to the custody of the Board of Correction for a term which may be extended to the remainder of the offender's life. I.C. § 18–6104 (rape); I.C. § 18–6608 (forcible sexual penetration); I.C. § 18–6503 (robbery). In addition to deciding the appropriate length for the term of the sentence for each crime, the district court had discretionary authority under Idaho Code § 18–308 to order that the sentences be served consecutively. *State v. Lawrence*, 98 Idaho 399, 565 P.2d 989 (1977). Also, in 1986 when the crimes for which he was convicted were committed by Amerson, the district court was authorized to sentence an offender to the custody of the state Board of Correction either for an indeterminate period time, or for a determinate or fixed period of time, but the two types of sentences could not be mixed in the imposition of a single sentence. *State v. Hoffman*, 108 Idaho 720, 701 P.2d 668 (Ct.App.1985). With respect to indeterminate sentences, the Board of Correction was vested with authority under certain circumstances to release a sentenced offender on parole. However, when the court imposed a fixed or determinate sentence, the Board was prohibited from releasing the offender on parole but was required to keep the offender incarcerated until the sentence—reduced by a statutory credit for good conduct—was fully served.[13] *State v. Rawson*, 100 Idaho 308, 597 P.2d 31 (1979).

In the present case, the district court—by mistake—initially imposed Amerson's sentences under the Unified Sentencing Act. For the rape, the court had ordered Amerson committed to the custody of the Board of Correction for a minimum term of confinement of twenty-five years to be followed by an indeterminate life term. The court imposed an identical sentence for the forcible penetration conviction. And for the robbery, the court ordered a thirty-five year term, with a ten-year minimum period of confinement. The court further directed that these sentences were to be served consecutively. As imposed, however, the sentences would have allowed for Amerson's release on parole before all of the sentences were fully served.

Later, it was brought to the district court's attention that the sentences were illegal because they were imposed under the Unified Sentencing Act, which was not in effect at the time the crimes were committed by Amerson. Accordingly, Amerson was returned to the district court for resentencing. The district court then imposed the sentences which are the subject of this appeal—a sentence of twenty-five years for the rape, a twenty-five year sentence also for the forcible penetration offense, and a sentence of ten years for the robbery. The district court ordered that Amerson's sentences should be fixed or determinate, and not indeterminate, so that Amerson would not be released on parole on any of the sentences. Finally, the district court directed that the three sentences be served consecutively. As a result, Amerson, who was twenty-seven years old at the time he was sentenced, will serve sixty years in confinement unless his sentences are modified or restructured through commutation, and he will be approximately eighty-seven years old when he completes his sentences.

---

**13.** This sentencing scheme was altered by the legislature through enactment of the Unified Sentencing Act in 1986, effective as to crimes committed on or after February 1, 1987. *1986 Idaho Sess. Laws*, ch. 232, p. 638. Under the current provisions of the Unified Sentencing Act, the sentencing court can impose a sentence containing both fixed and indeterminate features. The court is authorized to specify a minimum period of confinement during which the offender shall not be eligible for parole, and the Board of Correction may release the offender on parole during the balance of the sentence once the minimum period of confinement has been served. However, during the same legislative session in 1986 when the Unified Sentencing Act was enacted, the legislature amended the good conduct credit statute, I.C. § 20–101A, by limiting its provisions to persons convicted of offenses which had been committed prior to July 1, 1986. *1986 Idaho Sess. Laws*, ch. 322, p. 789. Thus, upon conviction for committing a crime after July 1, 1986, a person (such as Amerson) would not receive statutory credit on his or her sentence, for good conduct, regardless of whether the sentence was imposed under the Unified Sentencing Act or under the statutes replaced by that Act. Although the Unified Sentencing Act contains a provision addressing credit or reduction of a sentence for "meritorious service," Amerson's crimes were committed prior to the effective date of the Unified Sentencing Act and his sentences were not imposed under that Act.

■ Amerson argues on appeal that his sentences, because they are to be served consecutively, essentially amount to one determinate sentence of sixty years. He contends that his sentence should be reviewed for proportionality, suggesting that a sixty-year sentence is excessive with respect to the crimes he committed.

■ A proportionality analysis is used to determine whether a sentence violates state or federal constitutional guarantees against cruel and unusual punishment. It is applied where capital punishment is imposed or where the sentence is grossly out of proportion to the gravity of the offense committed. *State v. Brown*, 121 Idaho 385, 394, 825 P.2d 482, 491 (1992). *See also, State v. Matteson*, 123 Idaho 622, 851 P.2d 336 (1993). The proportionality argument raised by Amerson encompasses consideration of three aspects of his sentences: (1) the length in years of each sentence; (2) the fact that the sentences are determinate, to be served in custody and without parole; and (3) the requirement that the sentences be served consecutively. Here, we cannot say that the length of any one of the sentences imposed individually for each of the crimes committed by Amerson is grossly out of proportion to the gravity of the particular offense for which the sentence was given. Nor are we persuaded that we must consider the totality of the term of confinement resulting from consecutive service of the sentences as creating a single sentence arguably disproportionate to the gravity of any one of the criminal acts committed by Amerson. The opportunity for the district court to exercise its discretion under I.C. § 18–308, by ordering that the sentences be served consecutively, was a legal consequence of the commission by Amerson of more than one criminal act. Therefore, we find no constitutional violation.

■ Nonetheless, in order to properly carry out the function of conducting an appellate review of an alleged unreasonable sentence, we will consider the result, from a reasonableness standpoint, of the multiple sentences as formulated and structured by the district court. We are guided in this regard by the purposes for review of sentences expressed by our Supreme Court in *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992). There the Court restated the following principles set forth earlier in *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978):

[T]he general objectives of sentence review are:

(i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

(ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

(iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and

(iv) to promote the development and application of criteria for sentencing which are both rational and just.

121 Idaho at 393, 825 P.2d at 490. As noted in *State v. Dillon*, 100 Idaho 723, 724, 604 P.2d 737, 738 (1979), reasonableness is a fundamental requirement in the exercise of sentencing discretion. With respect to a claim of excessive sentence, our Supreme Court recently held that: "A legal sentence will not be disturbed on appeal unless it is unreasonably harsh in view of the sentencing objectives of protecting society, deterrence, rehabilitation and retribution." *State v. Roberts*, 129 Idaho 194, 200, 923 P.2d 439, 445 (1996).

■ Applying these principles, we conclude that the district court abused its discretion by arriving at an unreasonably harsh sentencing structure for Amerson's crimes. A term of confinement generally is reasonable to the extent that it appears necessary, at the time of sentencing to accomplish the goals of protection of society, the possibility of rehabilitation of the defendant, deterrence of the individual and the public generally and as a form of punishment or retribution for the offender's wrongdoing. As crafted by the district court, the totality of the sentences imposed for Amerson's crimes—incarceration for sixty years without the possibility for parole—is more than rea-

sonably necessary to accomplish the sentencing goals.

■ We note that the district court could have imposed a fixed life sentence for any of Amerson's crimes. We have held that a fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution or deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society. *State v. Eubank*, 114 Idaho 635, 759 P.2d 926 (Ct.App. 1988). Here, the district court evidently did not conclude that a fixed life sentence was appropriate for Amerson's circumstances. Indeed, when the district court initially sentenced Amerson, the court imposed indeterminate life sentences under the Unified Sentencing Act for two of the crimes, which would have allowed for the possibility of parole for Amerson on each of the sentences after serving specified minimum terms of confinement. Thus, it appears the district court was cognizant that a change of circumstances in the future may render parole a feasible alternative to Amerson's incarceration.

When the sentences were corrected, however, the district court did not allow any leeway for the Board of Correction, aside from the Board's commutation power, to prepare Amerson for reintegration into society free from the constraints of the penal system once his sentences have been fully served. In *Eubank*, we recognized that by carefully structuring multiple sentences, a court can ensure that correctional authorities will confine an offender for a lengthy period, but without rigidly forcing them to hold the inmate in prison long after rehabilitative progress or the biological effects of increasing age may have ameliorated the risk of recidivism. *Id.* at 639, 759 P.2d at 930.

In *State v. Alberts*, 121 Idaho 204, 824 P.2d 135 (Ct.App.1992), this Court modified the structure of the sentences that had been imposed on convictions for two counts of sexual abuse of a child under the age of sixteen. The district court had ordered the sentences to be served consecutively. This Court, citing several cases in which our Supreme Court previously had altered sentences from consecutive service to concurrent service, ordered that Alberts' sentences should be served concurrently. We believe the same result, in part, should obtain here.

Based upon the record in this case, including the circumstances of the criminal acts committed by Amerson, the fact that all three charges arose from a single incident of criminal behavior, Amerson's character, age and background and the effect of the crimes upon the victim, we conclude that concurrent service of the two twenty-five year sentences imposed by the district court for the rape and for the forcible penetration would sufficiently protect the public interest. Furthermore, to enable the Board of Correction, through the Commission on Pardons and Parole, to more properly reintegrate Amerson into society, the ten-year sentence for robbery, to be served consecutive to the other sentences, should be indeterminate rather than for a fixed or determinate period of time. In this regard we note that under I.C. § 20–223 (1980), which was in effect when Amerson committed these crimes, he could be released on parole on an indeterminate sentence for robbery only after serving five years or one-third of the sentence, whichever is the least. Accordingly, a ten-year indeterminate sentence for the robbery would require that Amerson serve an additional forty months following the completion of the two, concurrent twenty-five year sentences.

## CONCLUSION

To summarize, we uphold the judgment of conviction on each of the crimes. However, we modify the sentences imposed by ordering that the twenty-five year determinate sentences for rape and for forcible penetration be served concurrently. We further order that the sentence for robbery be for an indeterminate term not to exceed ten years, subject to I.C. § 20–223 (1980), and that it be served consecutively to the sentences imposed for rape and for forcible penetration.

LANSING and PERRY, JJ., concur.