180 P.3d 521

**Steven James COOK, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**State of Idaho, Plaintiff–Respondent,**

v.

**Steven James Cook, Defendant–Appellant.**

Nos. 33534, 33594.

Court of Appeals of Idaho.

March 14, 2008.

Molly J. Huskey, State Appellate Public Defender; Mark J. Ackley, Deputy Appellate Public Defender, Boise, for appellant. Mark J. Ackley argued.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent. Ralph R. Blount argued.

SCHWARTZMAN, Judge Pro Tem.

Steven James Cook appeals from the trial court's imposition of a combined seventy-eight year sentence, with twenty-nine years fixed, for nine counts of grand theft by deception and from denial of his Rule 35 motion for reduction of sentence. He also appeals from the district court's partial summary dismissal of his post-conviction claims of ineffective assistance of counsel, the exclusion of certain witness testimony at his post-conviction evidentiary hearing, and the dismissal of his remaining claims of ineffective assistance of counsel in regard to his sentencing and Rule 35 proceedings. We affirm in part, reverse in part, and remand.

## I.

### FACTS AND PROCEDURE

In October 2002, Cook entered guilty pleas to nine counts of grand theft by deception, Idaho Code Sections 18–2403(2)(a), 18–2407(1)(b), admitting to stealing approximately 1.5 million dollars from nine families. The thefts occurred between September 1996 and May 1999 through a fraudulent securities scheme whereby Cook formed Worldwide Financial, LLC and obtained thousands of dollars from numerous victims by representing that he was licensed and investing their money soundly. In reality, he was only investing some of the money—in a risky venture—and funneling the rest into his personal accounts or back to other investors to effectuate a Ponzi-like scheme.[1] After a sentencing hearing, where Cook's counsel did not call any witnesses, he was sentenced to a unified term of fourteen years, with five years determinate, for count I, to run concurrently with his sentence in a related federal case,[2] followed by eight consecutive unified terms of eight years, with three years determinate, for the remaining counts. He was also ordered to pay $1,467,577 in restitution. No appeal was filed from the entry of the judgment of conviction.

In April 2003, Cook filed a Rule 35 motion for reduction of sentence. At the hearing,

---

1. A Ponzi scheme is "a form of fraud in which belief in the success of a nonexistent enterprise is fostered by the payment of quick returns to the first investors from money invested by later investors." THE NEW OXFORD AMERICAN DICTIONARY 1326 (2001).

2. For effectuating a similar scheme on victims in Wyoming, Cook was charged in the United States District Court for the District of Wyoming with eleven counts of securities fraud, two counts of mail fraud, two counts of wire fraud, and two counts of interstate transportation of monies obtained by fraud. Facing a maximum of ninety-five years imprisonment and up to 5 million dollars in fines, he was subsequently sentenced in April 2001 to seventy-one months in federal prison, followed by three years of supervised release, and agreed to pay restitution of around $4.3 million, which included the approximately $1.5 million stolen from the Idaho victims.

By this time, Cook had also been convicted and sentenced in both Utah and Wyoming state courts for similar acts of theft. In Wyoming, he was given a suspended sentence of eighteen to thirty-four months with five years probation (to run concurrently with the federal sentence) and in Utah he was sentenced to one to fifteen years (also to run concurrently with the federal sentence) for securities fraud.

Cook's counsel again did not call any witnesses, but presented to the court a plan for Cook to be employed and begin paying restitution if released. After an opportunity for the parties to submit additional evidence regarding the alleged job offer, the trial court denied Cook's motion on November 4, 2003. Cook did not appeal.

In November 2004, Cook, through new counsel, filed a "Petition for Post–Conviction Relief and Renewed Motion for Reconsideration of [sic] Under Rule 35." The State filed a motion for partial summary judgment. Cook withdrew several of his claims and the court granted summary judgment on several other claims, including, relevant to this appeal, his allegations that counsel was ineffective for failing to file a motion to dismiss under Idaho's double jeopardy statute, I.C. § 19–315, and failing to file a motion to disqualify the district court judge on the basis of bias or prejudice. This left for an evidentiary hearing Cook's claims that counsel was ineffective for failing to file appeals from the judgment of conviction and denial of his Rule 35 motion and ineffective for failing to call witnesses and present evidence regarding a restitution plan at his sentencing and Rule 35 hearings.

Thereafter, the district court entered a pretrial order requiring that proposed exhibits and witnesses be disclosed by July 11, 2006, for the July 25 hearing. Both parties filed a notice of witnesses and exhibits, but on July 19 Cook also submitted a supplemental witness and exhibit list. The State responded with a motion in limine requesting the court exclude testimony from several witnesses, including those that were untimely disclosed, as well as the untimely disclosed exhibits. The court granted the motion in part, excluding testimony from all of the victims as well as introduction of certain exhibits from both the original and late-disclosed exhibit lists. At the end of the two-day hearing, however, the court agreed to take into account several of the previously excluded exhibits. After further briefing, the district court denied relief on Cook's claims that trial counsel had been ineffective at sentencing and the Rule 35 hearing, but agreed with Cook that counsel had been inef-

fective for not filing an appeal from the judgment of conviction and Rule 35 decision. Consistent with its order partially granting Cook's petition for post-conviction relief, the district court reentered Cook's judgment of conviction to afford him the opportunity for direct appeal of his sentences and the denial of his Rule 35 motion.

We now address both Cook's direct and post-conviction appeals.

## II.

## ANALYSIS

### A. Sentence Review

Cook argues that his aggregate seventy-eight year sentences, with twenty-nine years determinate, is excessive and amounts to an abuse of discretion. He contends that imposing such a lengthy sentence is unduly harsh—he was forty-five years of age at the time of sentencing—and that the court failed to adequately consider his remorse, chances of rehabilitation, and desire to make restitution.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). After a review of all the facts and circumstances of a case, we will find that the trial court abused

its discretion in sentencing only if the defendant, in light of the objectives of sentencing, shows the sentence was excessive under any reasonable view of the facts. *State v. Cope,* 142 Idaho 492, 500–01, 129 P.3d 1241, 1249–50 (2006); *State v. Charboneau,* 124 Idaho 497, 499, 861 P.2d 67, 69 (1993); *Brown,* 121 Idaho at 393, 825 P.2d at 490.

■ We note that this Court has long adhered to two parameters in reviewing sentences: first, we have held that the fixed or determinate term, *i.e.,* the minimum period of confinement, generally will be treated as the probable measure of confinement for the purpose of sentence review, *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct. App.1989); and, second, we generally have not considered the indeterminate portion of a defendant's sentence but leave open the possibility for an appellant to establish that special circumstances require consideration of more than the fixed period of confinement. *State v. Herrera,* 130 Idaho 839, 840, 949 P.2d 226, 227 (Ct.App.1997). *See also State v. Casper,* 143 Idaho 847, 848, 153 P.3d 1193, 1194 (Ct.App.2006); *State v. Medrain,* 143 Idaho 329, 334, 144 P.3d 34, 39 (Ct.App.2006); *State v. Bayles,* 131 Idaho 624, 627–28, 962 P.2d 395, 398–99 (Ct.App.1998). But, as we just pointed out in *State v. Whittle,* 145 Idaho 49, 175 P.3d 211 (2007), the second of these parameters was recently overturned by the Idaho Supreme Court in *State v. Oliver,* 144 Idaho 722, 726 n. 1, 170 P.3d 387, 391 n. 1 (2007). There, the Court reiterated the presumption that the fixed portion of the sentence would be the defendant's probable term of confinement, but also held that "[a] defendant challenging his or her sentence on appeal need not show special circumstances in order for the appellate court to review the entire sentence, including the indeterminate portion." *Id.* Accordingly, we will review Cook's entire sentence to assess whether the cumulative period is reasonable.

In imposing sentence, the trial court specifically referred to the primary goals of sentencing that it was required to consider, including protection of society, rehabilitation, and deterrence in the sense of how the sentence would affect Cook's future conduct and the conduct of people in similar circumstances who are contemplating committing similar acts. The court indicated it was necessary to consider restitution and noted that in this case it would be very difficult for Cook to make his victims whole, given the large sum of money and extent of devastation, referencing the "heartbreak" and "sadness" involved. Finally, the court indicated that it was required to take into account retribution, *i.e.,* punishment, in making the final determination. With this preface, the court proceeded to impose the combined seventy-eight year sentence, with twenty-nine years fixed.

On appeal, Cook advances several arguments to support his proposition that the cumulative sentence imposed was unduly harsh. He first contends that he had no criminal history prior to being convicted in federal court and Wyoming and Utah state courts for related fraudulent activity. He also posits that his term of incarceration amounts to essentially a life sentence since he will not even be eligible for parole until he is well into his seventies. He argues that his advanced age by the time he is eligible for release would preclude him from making meaningful restitution, and given his education and lengthy employment history, he contends that he would have a high likelihood, if released, of obtaining gainful employment as a means of repaying his victims, at least in part.

Cook also asserts that he has demonstrated remorse for the crimes he committed—first by his waiver of the preliminary hearing and then through his guilty plea to the nine counts of grand theft by deception. Further, Cook points out that during the federal case, he agreed to pay restitution to the Idaho victims even though he was not required to, knowing it would result in an increased sentence according to the federal sentencing guidelines. Cook also notes that he provided assistance to federal and state authorities in those agencies' investigations into instances of criminal activity by individuals with whom Cook had contact.

Cook further argues that his actions were not part of a deliberately orchestrated scheme to defraud his friends and neighbors, but rather born out of desperation when he himself was defrauded by TriStar Corpora-

tion, the corporation in which he was, at least partially, investing his victims' funds. He claims that he lost his clients' money through a series of bad investments and by using their funds to pay existing clients when his involvement with TriStar began to catch up with him. Finally, he urges this Court to consider the investigator's finding that there were no hidden assets discovered and the fact that he will have already spent considerable time in federal prison for what he describes as a common set of actions.

■ After examining Cook's sentence in light of the goals of sentencing, we conclude the trial court abused its discretion by imposing an unreasonably harsh sentencing structure. As mentioned above, a term of confinement generally is reasonable to the extent that it appears necessary, at the time of sentencing, to accomplish the goals of protection of society, the possibility of rehabilitation of the defendant, deterrence of the individual and the public generally, and as a form of punishment or retribution for the offender's wrongdoing. Given this standard, our task in the present case is to identify the objectives served by the combined seventy-eight year sentence, with twenty-nine years determinate, and to assess whether the duration of confinement is greater than necessary to accomplish these requisite objectives. *See State v. Carrasco*, 114 Idaho 348, 353, 757 P.2d 211, 216 (Ct.App.1988) (reversed on other grounds); *compare with State v. Bybee*, 115 Idaho 541, 768 P.2d 804 (Ct.App.1989) (affirming an indeterminate sentence of fourteen years and restitution of over 1.5 million dollars where defendant had defrauded a number of his former investment clients). We conclude that it is.

The length of Cook's aggregate sentence is a result of the court's decision to order that the terms for *all* the counts be served consecutive to each other. However, there are numerous cases where the Idaho Supreme Court and this Court have altered sentences from consecutive service to concurrent service. In *State v. Amerson*, 129 Idaho 395, 407, 925 P.2d 399, 411 (Ct.App.1996), the trial court ran the sentences for three separate counts consecutively, resulting in Amerson having to spend sixty years in prison before

becoming eligible for parole. This Court, citing the fact that all three charges arose from a single incident of criminal behavior and Amerson's character, age, and background, ordered that his sentences be served concurrently. *Id.* at 408, 925 P.2d at 412.

In *State v. Alberts*, 121 Idaho 204, 824 P.2d 135 (Ct.App.1991), we modified sentences for separate counts from consecutive to concurrent, noting that:

> In light of Alberts' expression of remorse for his conduct, his recognition of his problem, his willingness to accept treatment and other positive attributes of his character, we conclude that some leniency in his sentences is justified.... Alberts should be able to benefit, if at all, from what ever rehabilitative programs are available through the Board of Correction, within a fifteen year period, given the favorable reports for treatment and control [of his criminal behavior] found in the presentence investigation report and the evaluation and performance indicators in the Department of Corrections' information provided to the district court as part of the Department's recommendation to release Alberts on probation.

*Id.* at 209, 824 P.2d at 140.

In *State v. Dunnagan*, 101 Idaho 125, 609 P.2d 657 (1980), two defendants each received eleven consecutive sentences for a series of convictions. Their sentences essentially amounted to an initial period of fourteen years followed by another consecutive sentence of fourteen years, for a total of twenty-eight years. Although the Supreme Court recognized the discretionary authority of the trial court to impose sentences within the maximum limits set by statute, and also to require that the sentences be served consecutively, the Court ordered a modification of the sentences to run concurrently. It said:

> One of the objects of our system of criminal justice is rehabilitation. Either or both of these unfortunate young men should be able to benefit, if at all, from what rehabilitative programs are available, within a fourteen year period. Under these circumstances, to impose a sentence which was more than double the length of

their current natural lives was excessive and unduly harsh.

*Id.* at 126, 609 P.2d at 658.

In *State v. Drapeau,* 97 Idaho 685, 551 P.2d 972 (1976), the Court modified sentences—ordering that they be served concurrently rather than consecutively as specified by the trial court—because the two crimes "arose out of the same act." *Id.* at 693, 551 P.2d at 980. Similarly, in *State v. Monroe,* 97 Idaho 457, 546 P.2d 854 (1976), the Supreme Court ordered a modification of Monroe's sentence to run concurrently instead of consecutively due to the acts being part of a "common scheme or plan." There, Monroe had pled guilty to three counts of forgery, and after accepting his guilty plea, the trial court sentenced him to fourteen years on each count and ordered the terms to be served consecutively. The Court modified the sentences, finding the imposition of three consecutive fourteen year sentences to be unduly harsh and an abuse of discretion. *Id.* at 457, 546 P.2d at 854. *See also State v. Hoskins,* 131 Idaho 670, 673, 962 P.2d 1054, 1057 (Ct.App.1998) (modifying sentences to run concurrently instead of consecutively due to the nature of the offenses and the defendant's lack of criminal background). *Compare State v. Teske,* 123 Idaho 975, 977, 855 P.2d 60, 62 (Ct.App.1993) (declining to order sentences to be served concurrently instead of consecutively where defendant had prior criminal history, inability to maintain steady employment, and a problem with drug and alcohol abuse).

Based on the record in this case, including the circumstances of the criminal acts committed by Cook, the fact that the charges arose from a single continuing plan of deception, his punishments in other jurisdictions for related criminal conduct, and his character, age and background, we conclude the cumulative sentences imposed for the nine counts of theft by deception are excessive. We find it notable that prior to his convictions in federal court for his involvement in the same scheme (with different victims) at issue here, Cook had no prior criminal record. We also note that to incarcerate Cook for, at a minimum, the full determinate twenty-nine years would be nearly the equivalent

of imposing a life sentence given the relatively advanced age Cook will have reached in a prison setting by the time he is even eligible for parole.

In addition, such a sentence essentially discounts any possibility of rehabilitation and successful reentry into society. In *State v. Eubank,* we recognized that by carefully structuring multiple sentences, a court can ensure that correctional authorities can confine an offender for a lengthy period, but without rigidly forcing them to hold the inmate in prison long after rehabilitative progress or the biological effects of increasing age may have ameliorated the risk of recidivism. 114 Idaho 635, 639, 759 P.2d 926, 930 (Ct. App.1988). *See also Amerson,* 129 Idaho at 408, 925 P.2d at 412 (citing *Eubank* in modifying sentences to run concurrently rather than consecutively). For someone with a relatively stable background who had apparently spent the majority of his adult years as a law-abiding citizen, it is certainly reasonable to believe that a lesser term of incarceration—in combination with the relatively shorter sentences imposed in federal and Wyoming and Utah state courts—would be sufficient to rehabilitate Cook and yet impose a strong element of punishment and deterrence against ever committing such acts again, and thus protect society from any further criminal behavior on his part. Instead, by ordering such a lengthy sentence, the lower court ensured that Cook would remain incarcerated well beyond when he likely would be rehabilitated and his risk of recidivism sufficiently diminished.

In sum, we believe the court did not give sufficient consideration to the defendant's status as a first time offender, his expressions of remorse, the likelihood of rehabilitation and deterrence possible with a lesser cumulative sentence, and his amenability to make at least some restitution. While mentioning the goals of sentencing, the court appears to have focused almost entirely on the economic gravity of Cook's crimes and their effect on his victims, without also considering the factors named above in determining whether such a lengthy sentence was appropriate under the circumstances. After a review of the record, we conclude the sen-

tences imposed here are longer than reasonably necessary to deter similar conduct in the future, to exact retribution and punishment, and to protect society. On these grounds, we hold that the trial court abused its discretion in running the sentences for *all eight* counts consecutively, and we modify the sentences as follows: for Count I, a unified fourteen year term, with five years fixed, followed by *four consecutive* unified eight-year terms, each with three years fixed. The remaining four unified eight-year terms shall run concurrently with each other and concurrently with the four consecutive terms.[3] This yields a reduced aggregate sentence of forty-six years, with seventeen years fixed, ensuring that Cook can remain under state supervision for the rest of his life when released onto parole.

## B. Summary Disposition of Ineffective Assistance Claims[4]

■ In his post-conviction action, Cook contends the district court erred in summarily dismissing his claims that his trial counsel was ineffective for failing to file a motion to dismiss the charges based on I.C. § 19–315 and failing to file a motion to disqualify the presiding district court judge. On review of a dismissal of a post-conviction relief application without an evidentiary hearing, we determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file; moreover, the court liberally construes the facts and reasonable inferences in favor of the nonmoving party. *Ricca v. State,* 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct.App. 1993).

■ A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State,* 121 Idaho 918, 924–25, 828 P.2d 1323, 1329–30 (Ct.App.1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the de-

fendant was prejudiced by the deficiency. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674, 693 (1984); *Hassett v. State,* 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App.1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Id.* at 761, 760 P.2d at 1177. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation. *Howard v. State,* 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct.App.1994).

■ Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the test. *Williams v. State,* 132 Idaho 437, 438, 974 P.2d 83, 84 (Ct.App.1998); *Sanchez v. State,* 127 Idaho 709, 713, 905 P.2d 642, 646 (Ct. App.1995).

### 1. Failure to file motion to dismiss

On Cook's allegation of ineffective assistance of counsel due to his attorney's failure to file a motion to dismiss premised on I.C. § 19–315, the lower court found there to be no issue of material fact because it determined that even had the motion been filed, it would not have succeeded.

■ Idaho Code Section 19–315 bars the prosecution or indictment for an act charged as a public offense that is "within the venue

---

3. On remand, the trial court is free to choose which four counts it wishes to run consecutive and which four counts to run concurrent.

4. At oral argument, Cook conceded that if we reduce the sentence, his contentions regarding

the denial of his Rule 35 motion as well as his Eighth Amendment cruel and unusual punishment claim would be moot. Therefore, we do not address those issues.

of another state, territory, or country, as well as of this state" once the defendant has been convicted or acquitted of the act by another sovereign. *See Garcia v. State Tax Com'n of State of Id.*, 136 Idaho 610, 614, 38 P.3d 1266, 1270 (2002). As the lower court noted, to succeed on his I.C. § 19–315 claim, Cook would have to show that he had already been either acquitted or convicted of the acts leading to the Idaho charges in a previous criminal proceeding. Pursuing this avenue of analysis, the court found that none of the crimes for which Cook was charged and pled guilty in Idaho were covered in the federal or Utah prosecutions.[5] We agree that Cook would not have succeeded on such a novel theory.

In federal court in the district of Wyoming, Cook was indicted on eleven counts of security fraud, two counts of mail fraud, two counts of wire fraud, and two counts of interstate transportation of monies obtained by fraud. Pertaining to counts one through eleven, the indictment lists the specific act(s) and specific victim(s) in regard to each count. Notably, the victims were all residents of Wyoming. In regard to the two counts of mail fraud, the acts for which he was charged involved the mailing of letters and statements of account in the names of Wyoming residents, both times sent from a Utah address to a Wyoming address. The wire fraud counts arose from Cook's making wire transfers both from Utah to Wyoming and from Wyoming to Utah. Finally, the counts of interstate transportation of monies obtained by fraud arose from: 1) Cook's transport of a fraudulent check in interstate commerce from Utah to Wyoming, and 2) Cook's transport from Wyoming to Utah of a check drawn on funds taken by fraud from a Wyoming resident. Clearly, Cook was indicted solely for his actions occurring in Utah and Wyoming and in regard to Wyoming residents.

Cook places great weight on the fact that the Wyoming indictment made a general reference to his conduct with some Idaho victims, and argues that as a result of this mention, we should interpret his guilty plea as covering his actions in defrauding them as well. It is true that the Wyoming indictment (entitled "The Scheme") makes mention of Cook's illegal activities as a whole and includes references to obtaining monies from Idaho as well as Utah and Wyoming between August 1996 and September 2000.[6] However, such a passing reference is not dispositive of the issue—the key question is whether Cook was actually charged with a crime in federal court for his actions in Idaho. After reviewing the indictment we conclude that mention of his activities in Idaho was nothing more than an effort to "set the stage" and present the whole story in the federal indictment. Certainly, passing references to his activities in Idaho would not be sufficient to indict him for his illegal acts there; and there is no reason to believe that the indictment was meant to cover the scheme in regard to Idaho victims where it carefully laid out each count, complete with the names and residences of the victims, and there was no such care taken in regard to the Idaho acts. In other words, Cook was indicted in federal court only for the portion of his activities which victimized Wyoming citizens.

Cook also points to the fact that the federal judge took his Idaho actions into account in sentencing him for the seventeen counts to which he pled guilty. This is immaterial to whether section 19–315 applies to preclude a prosecution in Idaho. Taking his Idaho acts into consideration in sentencing, for purposes of restitution on the defendant's stipulation, does not rise to the level of a conviction or acquittal for those acts—nor does it convince us that the Wyoming indictment and Cook's subsequent guilty pleas en-

---

5. In summarily dismissing Cook's claim, the district court makes reference to a "Utah prosecution." On appeal, Cook does not argue that such a prosecution precludes his being charged in Idaho, and we are not provided with the facts of such a case in the record. Thus, we focus solely on whether the federal indictment in the District of Wyoming precluded Cook facing Idaho state charges.

6. The only direct reference to Idaho investors relates to Cook travelling to Montpelier, Idaho and separately contacting individuals from related families investing with him and requesting that those (unnamed) investors write personal checks totaling in excess of $40,000 (used to repay Wyoming investors).

compassed his Idaho actions. Rather, it was an instance of a court utilizing all the information available to it to fashion an appropriate sentence similar to the provision in I.C. § 19–5304(9) which allows Idaho courts to, "with the consent of the parties," order restitution to victims for economic losses for crimes that "are not adjudicated or are not before the court."

We conclude that Cook's attorney was not deficient. Even had he filed a motion to dismiss based on section 19–315, it would not have succeeded because neither of Cook's prior prosecutions encompassed his Idaho actions and victims and therefore, there was no genuine issue of fact as to whether counsel was ineffective in not filing a motion to dismiss. *See also State v. Mathews,* 133 Idaho 300, 308, 986 P.2d 323, 331 (1999) (given unclear nature of the law under the circumstances and absence of definitive authority, counsel not required to pursue additional avenue of defense). Accordingly, the district court did not err in summarily dismissing Cook's claim on this issue.

## 2. Disqualification of trial judge

Summarily dismissing Cook's claim that his counsel was ineffective for failing to file a motion to disqualify him as the presiding trial court judge, the judge noted that he had disclosed at the outset of the case all relevant contacts he may have had, assured the parties there were no prejudices or conflicts that would deprive Cook of a fair trial, and left open the option of their filing a motion to disqualify. The court concluded that the facts upon which Cook relies to argue that a motion to disqualify for cause was appropriate were fully known to Cook and that he essentially waived his objection that the judge was biased, prejudiced or otherwise conflicted.

At the time of Cook's trial, Idaho Criminal Rule 25 contained no provision for disqualification without cause, but allowed only for disqualification on the following relevant grounds:

(1) That the judge or magistrate is a party, or is interested, in the action or proceeding.

. . . .

(3) That judge or magistrate has been attorney or counsel for any party in the action or proceeding.

(4) That judge or magistrate is biased or prejudiced for or against any party or that party's case in the action.

I.C.R. 25(a).

■ A motion for disqualification may be raised at any time. I.C.R. 25(c). Disposition of a motion to disqualify is within the sound discretion of the trial court. *State v. Elliott,* 126 Idaho 323, 329, 882 P.2d 978, 984 (Ct. App.1994). Such a motion need be granted only where there is actual prejudice against the litigant of such a nature as to render it improbable that the presiding judge could or would give the litigant a fair and impartial trial. *Id; see also State v. Pizzuto,* 119 Idaho 742, 776, 810 P.2d 680, 714 (1991).

In his post-conviction petition, Cook identified several grounds for what he believed to be bias on the part of the trial court judge. Specifically, he pointed to his not following through on a previous inquiry into renting office space from the judge, the judge's prior representation of Cook's now ex-wife in a divorce action that was later withdrawn, and the judge's prior representation of two of the victims in matters unrelated to this case. After Cook relayed these concerns to trial counsel, his attorney met with the judge and prosecutor to discuss these potential conflicts. In that meeting the trial judge informed counsel that he could not recall any close contacts with Cook, and while he did remember briefly representing Cook's ex-wife, he noted that the case had been dropped. The judge also indicated that when practicing law, he had performed some unrelated legal work for some of the victims, but insisted that those dealings would not affect his judgment in the current case. Ultimately, the judge expressed that he was not willing to disqualify himself.

After his counsel informed him via a letter of what occurred at the meeting and requested that Cook advise him whether he wished to file a motion to disqualify, Cook responded in a letter to counsel stating:

I don't feel comfortable with [the judge], but I certainly don't want to make him

angry. If he isn't going to step down, should we just let the issues rest? If the final sentence isn't what we want isn't this an issue we can bring up on appeal? In summary, I defer to your judgement, [sic] but since he doesn't want to step down isn't it in my best interest not to force the issue?

. . . .

PS. [sic] What are your thoughts on [the trial judge]? Do you think he will be fair?

Subsequently, the judge submitted a letter to both parties indicating that he had represented a client in a suit against Walton Feed, which, at the time, may have still been owned by one of Cook's victims, that he had probated the estate of a victim's mother, and that he had represented that same victim in forming a business corporation and preparing a home sale contract. The judge again reiterated his belief that he did not possess any bias or prejudice in regard to Cook's case and would not disqualify himself sua sponte, but had undertaken to disclose the issues in case either party wished to move for disqualification. No motion to disqualify was ever filed and when entering his guilty plea, Cook informed the judge upon inquiry that "I feel as if you will be fair and impartial, and I have absolutely no problem with you being the judge in this case." [7] It was not until he had met with the presentence investigator that Cook began to express concern with the trial judge's involvement in his case. Cook told his counsel that comments made by the investigator gave him concern about the issue, but counsel reminded Cook that sentencing was only a few days away, the judge was not biased or prejudiced against Cook, and the judge was unwilling to disqualify himself. According to his affidavit, based on this advice and his hesitance to make the judge "angry," he did not direct counsel to file a motion to disqualify.

■ After examining the surrounding circumstances, we conclude that Cook did not present a genuine issue of fact as to whether his counsel was ineffective for failing to file a motion to disqualify the trial judge. The record shows that the two had discussed the issue, counsel had stated an opinion, and Cook apparently agreed because he never requested that the motion be filed. When Cook initially raised the issue with counsel, his attorney discussed Cook's concern with the trial judge and upon receiving the judge's decision that he would not disqualify himself, presented the information to Cook and asked how Cook wished to proceed. Cook then decided that he did not wish to have his attorney file a motion to disqualify and reiterated this decision when pleading guilty after the judge inquired specifically as to Cook's knowledge of the situation. Prior to sentencing, he and counsel again discussed the reasons for not moving to disqualify the presiding judge, and Cook ultimately decided to forego filing such a motion. Thus, the record shows that Cook made multiple informed decisions with the assistance of counsel not to pursue disqualification.

Now, he appears to argue that standards of professional competence required that counsel explicitly advise him to seek disquali-

---

7. The entire dialogue occurred as follows:

[The Court]: Now there has been some discussion that I could possibly have a conflict of interest in this case as the Judge. Your attorney advised you of the discussion that has been held in that regard?

[Cook]: He did and I feel fine. I feel as if you will be fair and impartial, and I have absolutely no problem with you being the Judge in this case.

[The Court]: Okay. In fact, I think I wrote a letter after we had discussed this on the phone, telephone conference, with [the attorneys]. I think I wrote him a letter and explained, contact[s] or prior associations I have with one or more of these individuals; is that correct?

[Cook]: That is correct and I have seen a copy of that letter.

[The Court]: You have read a copy of that letter then?

[Cook]: Yes, I have.

[The Court]: Okay. And any conflict that may be there, do you personally waive in open court?

[Cook]: I do.

[The Court]: And in making that waiver, you've been able to discuss and have contact with your attorney in that regard?

[Cook]: I have, yeah. There is absolutely no problem with that.

[The Court]: [directed at Cook's counsel] And you have discussed these things personally . . . with Mr. Cook?

[Defense counsel]: Yes, I have Your Honor.

.. 

fication and/or to override his decisions and file the motion. There were, however, several tactically valid reasons not to seek disqualification in a case such as this—especially when counsel is convinced, as he apparently was here, that the judge would not exhibit bias or prejudice. What transpired here was not an instance of deficient performance, but a calculated decision, ultimately made by Cook, that it was to his benefit not to file the motion. And as the State points out, we will not second guess strategic trial decisions. *Howard,* 126 Idaho at 233, 880 P.2d at 263; *State v. Roles,* 122 Idaho 138, 145, 832 P.2d 311, 318 (Ct.App.1992). That Cook received a harsher sentence than he may have expected does not now, in hindsight, allow him to succeed in alleging ineffective assistance where the record shows that his attorney presented him with the requisite information and abided by his wishes not to pursue the motion. Accordingly, we conclude that Cook did not allege facts which, if true, presented a genuine issue of fact as to whether his counsel was ineffective for not filing a motion to disqualify, and therefore summary dismissal of the issue was proper.[8]

## C. Exclusion of Testimony at Evidentiary Hearing

Cook contends the district court erred in excluding testimony of the victims that he was attempting to introduce at the evidentiary hearing on his claim that his counsel was ineffective during the Rule 35 proceedings. Specifically, Cook sought to present victims' testimony that if a feasible plan were put in place for his employment and payment of restitution, they would prefer that to Cook's imprisonment.

After Cook offered late disclosure of certain witnesses and exhibits, i.e., victim letters, the State moved to exclude this evidence as well as that of all the victims, but offered a stipulation as to their proposed testimony. The proposed "stipulation" stated that "many of the victims, if not all, at the present time, would be in favor of a restitution plan that meets the high standards of

assurance, reliability, and feasibility of performance required by professional reputable business persons in considering business plans they might enter into personally or on behalf of their principals." The district court ultimately excluded the testimony and the letters of the victims on the basis that the State was willing to stipulate that the victims would be in favor of reducing Cook's sentence if a viable and realistic restitution plan existed and could be implemented and that, in light of the stipulation, to offer the testimony would be time consuming and unnecessary.

■ Proceedings brought under the Uniform Post–Conviction Act, I.C. § 19–4901, *et seq.,* are civil actions and are governed, for the most part, by the Idaho Rules of Civil Procedure. I.C.R. 57(b); *Pizzuto v. State,* 127 Idaho 469, 470, 903 P.2d 58, 59 (1995); *Milburn v. State,* 135 Idaho 701, 705, 23 P.3d 775, 779 (Ct.App.2000). Therefore, in examining Cook's claim of error, we examine Idaho Rule of Evidence 403 which gives the court discretion to exclude even relevant evidence whose probative value is substantially outweighed by, among other things, considerations of undue delay, waste of time, or needless presentation of cumulative evidence. This determination is within the discretion of the lower court. *Thorn Springs Ranch Inc. v. Smith,* 137 Idaho 480, 486, 50 P.3d 975, 981 (2002).

On appeal, Cook argues the stipulation was not sufficient to encompass the proposed testimony because Cook never agreed that it accurately and fully reflected the victims' views, it was not based on anything other than the State's representation of what the testimony would have been, and it contained too much "legalese."

■ We conclude the court abused its discretion under I.R.E. 403 by forcing Cook to accept the State's wording and perspective of the testimony in the stipulation. However, we conclude the error is harmless for several reasons. While the stipulation did not convey word for word the victims' pro-

---

8. While the trial judge was not required in this instance to disqualify himself, we do note that given his multiple entanglements, it may have been more cautiously prudent to do so as a matter of discretion.

posed testimony, it did manage to capture the essential thrust of what the victims would have testified. We also note that at the end of the hearing, the court, at Cook's request, agreed to consider the excluded exhibits—the letters of the victims regarding their desire for Cook's release, so that he could begin making restitution. Finally, as discussed below, the victims' requests for restitution over incarceration were basically rendered moot, given that no viable job opportunity was presented to the court by which Cook could realistically undertake meaningful restitution.

### D. Denial of Ineffective Assistance of Counsel Claims at the Sentencing and Rule 35 Hearings

Cook argues that his trial counsel was ineffective at his sentencing and Rule 35 proceedings for failing to call witnesses and present evidence of an employment plan that would allow him to make restitution as an alternative to incarceration. In essence, he alleges that had counsel presented the restitution plan by calling various witnesses, Cook would not have received the lengthy sentence that he did.

When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 794 P.2d 654 (Ct.App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 764 P.2d 439 (Ct.App.1988).

Generally, defense counsel is bound to conduct a prompt and thorough investigation of his or her case. *Richman v. State*, 138 Idaho 190, 193, 59 P.3d 995, 998 (Ct.App. 2002) (discussing whether defense counsel was deficient for failing to investigate and present mitigating evidence at sentencing of defendant's mental condition). A decision not to investigate or present mitigating evidence is assessed for reasonableness, giving deference to counsel's judgment. *Id.* (citing

*Wallace v. Ward*, 191 F.3d 1235, 1247 (10th Cir.1999)).

At the post-conviction evidentiary hearing, Cook and several other witnesses testified about a certain employment opportunity for him which they alleged was at least in formation stages prior to Cook's sentencing and Rule 35 hearings and which would have enabled him to make meaningful restitution to his victims if placed on probation. In denying Cook's claim, however, the district court concluded that Cook had failed to establish that there existed a viable employment and restitution plan that his counsel allegedly could and should have presented at sentencing or the Rule 35 hearing. It found the evidence of a plan to be "unconvincing and insufficiently supported" for the court to endorse as legitimate, noting that the plan existed only "on paper." Importantly, the court noted there appeared to be no rational business reason supporting the witnesses' contentions that they were willing to pay Cook significant sums of money as a parolee for his services or sufficient evidence to prove the prospective businesses participating were viable themselves. In regard to counsel's decision not to call these witnesses at either hearing, the court noted the plan appeared to be only "partially hatched" prior to the Rule 35 hearing and there was insufficient evidence that Cook's counsel had even been apprised of what existed of the plan prior to sentencing. Additionally, the court pointed out that counsel did, at the Rule 35 hearing, argue to the court that a restitution plan was in place to the extent counsel felt comfortable given the information he possessed. Thus, the court decided that even had Cook presented a plan that he advanced during post-conviction proceedings, it would not have imposed a different sentence or granted Cook's Rule 35 motion and therefore, counsel was not ineffective.

Upon a review of the record, we conclude the district court did not err in these findings of fact and its ultimate conclusion that counsel had not been ineffective. There was ample evidence for the district court to decide that counsel's choice not to offer witnesses or certain details in regard to the plan was reasonable given both the highly speculative

nature of the proposed arrangement and the fact that it appears much of the evidence relied upon by Cook was not even communicated or readily available to counsel prior to the Rule 35 hearing. It was not erroneous for the court to conclude that given the significant flaws in the plan as presented in the evidentiary hearing, the arrangement was not feasible, and thus even if it had been presented, it would not have made a difference in Cook's sentence. Accordingly, the district court did not err in determining that counsel was not ineffective for not presenting the plan during the sentencing or Rule 35 proceedings.

## III.

## CONCLUSION

The judgments of conviction for nine counts of grand theft by deception are affirmed, but the sentences are modified as specified above. On remand, the district court is directed to enter an amended judgment modifying the sentences accordingly.

We also affirm the court's summary disposition of Cook's post-conviction claims of ineffective assistance of counsel for counsel's failure to file a motion to dismiss or a motion to disqualify the trial judge. And finally, Cook does not show reversible error in the district court's exclusion of certain testimony at the post-conviction evidence hearing or error in the court's rejection of his claim that counsel was ineffective at his sentencing and Rule 35 motion hearings. The orders of dismissal of Cook's post-conviction claims are affirmed.

Judge LANSING and Judge PERRY concur.