## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

| | | |
|---|---|---|
| STEVEN JAMES COOK, | ) | **Docket No. 36851** |
| Petitioner-Respondent, | ) | |
| vs. | ) | |
| STATE OF IDAHO, | ) | |
| Respondent-Appellant. | ) | |
| STATE OF IDAHO, | ) | **Docket No. 36922** |
| Plaintiff-Appellant, | ) | **2010 Unpublished Opinion No. 611A2** |
| vs. | ) | **Filed: August 27, 2010** |
| STEVEN JAMES COOK, | ) | **Stephen W. Kenyon, Clerk** |
| Defendant-Respondent. | ) | **SECOND AMENDED OPINION** |
| | ) | **THIS COURT'S PRIOR OPINIONS** |
| | ) | **DATED AUGUST 25 AND 26, 2010** |
| | ) | **ARE HEREBY AMENDED** |
| | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bear Lake County. Hon. David C. Nye, District Judge.

Judgment granting post-conviction relief, order granting relief from judgment in initial post-conviction action, and order reducing sentence, reversed.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for appellant. Jessica M. Lorello argued.

Nevin, Benjamin, McKay & Bartlett LLP, Boise, for respondent. Dennis Benjamin argued.

_____

LANSING, Chief Judge

Steven James Cook filed a motion asking the district court to suspend the unserved portion of his sentences for nine counts of grand theft by deception so that he could gain

1

employment and begin paying restitution to his victims. The district court, treating Cook's claims below partially as an Idaho Rule of Civil Procedure 60(b) motion for relief from the judgment denying a prior action for post-conviction relief, and partially as a successive post-conviction petition, granted Cook the requested relief. The State appeals.

## I.

## BACKGROUND

In a prior opinion, this Court described Cook's criminal proceedings as follows:

> In October 2002, Cook entered guilty pleas to nine counts of grand theft by deception, Idaho Code Sections 18-2403(2)(a), 18-2407(1)(b), admitting to stealing approximately 1.5 million dollars from nine families. The thefts occurred between September 1996 and May 1999 through a fraudulent securities scheme whereby Cook formed Worldwide Financial, LLC and obtained thousands of dollars from numerous victims by representing that he was licensed and investing their money soundly. In reality, he was only investing some of the money--in a risky venture--and funneling the rest into his personal accounts or back to other investors to effectuate a Ponzi-like scheme. After a sentencing hearing, where Cook's counsel did not call any witnesses, he was sentenced to a unified term of fourteen years, with five years determinate, for count I, to run concurrently with his sentence in a related federal case, followed by eight *consecutive* unified terms of eight years, with three years determinate, for the remaining counts. He was also ordered to pay $1,467,577 in restitution. No appeal was filed from the entry of the judgment of conviction.
>
> In April 2003, Cook filed a Rule 35 motion for reduction of sentence. At the hearing, Cook's counsel again did not call any witnesses, but presented to the court a plan for Cook to be employed and begin paying restitution if released. After an opportunity for the parties to submit additional evidence regarding the alleged job offer, the trial court denied Cook's motion on November 4, 2003. Cook did not appeal.

*Cook v. State*, 145 Idaho 482, 485-86, 180 P.3d 521, 524-25 (Ct. App. 2008) (footnotes omitted).

The procedural history of Cook's post-conviction proceedings is complex and protracted. Cook's post-conviction petition was filed in November of 2004. *Id.* at 486, 180 P.3d at 525. Cook there alleged, among other things, that his defense counsel had been ineffective for failing to file appeals from the judgment of conviction and from the denial of Cook's Idaho Criminal Rule 35 motion, and was ineffective for failing to call witnesses and present evidence regarding a restitution plan at Cook's sentencing and I.C.R. 35 hearings. *Cook*, 145 Idaho at 486, 180 P.3d at 525. On September 7, 2006, the district court entered its judgment on Cook's post-conviction petition. It denied relief on Cook's ineffective assistance of counsel claims concerning the

sentencing and I.C.R. 35 hearings, but agreed with Cook that counsel had been ineffective for not filing an appeal. *Cook*, 145 Idaho at 486, 180 P.3d at 525. The district court therefore reentered Cook's judgment of conviction on September 7, 2006, to allow Cook to file a timely appeal. However, though Cook's post-conviction counsel filed an appeal from the partial denial of Cook's post-conviction petition on October 4, 2006, counsel failed to timely appeal from the reentered judgment of conviction. Consequently, the district court again reentered Cook's judgment of conviction on December 13, 2006, pursuant to a stipulation of the parties.[1] Cook then timely appealed, challenging his sentence and the denial of his I.C.R. 35 motion. The appeals from the judgment of conviction and from the judgment in the post-conviction action were consolidated.

In the consolidated appeal, this Court determined that Cook's cumulative consecutive sentences were unreasonably harsh and reduced them to an aggregate term of forty-six years with seventeen years determinate. *Cook*, 145 Idaho at 489-90, 180 P.3d at 528-29. The district court's disposition of the remaining post-conviction claims was affirmed. *Id*. at 490-96, 180 P.3d at 529-35. The Court's decision was entered in both cases on March 14, 2008, and a remittitur was issued on April 8, 2008.

While Cook's consolidated appeal was pending, his post-conviction counsel filed a "Motion to Set Aside Judgment Pursuant to IRCP Rule 60(b)" with a caption showing Cook as the plaintiff and the State as the defendant but bearing Cook's criminal case number. Though this motion was originally filed in the district court's criminal case file on June 8, 2007, the district court later deemed it to have been filed in the post-conviction case on that date because the use of the criminal case number on the motion was in error.

---

[1] An "Order Again re-Entering Judgment of Conviction" was also filed in the post-conviction action. The court below treated it as a reentry of the post-conviction judgment. However, it is clear from the content of the order itself, the stipulation to reenter the judgment of conviction, and the simple fact that the post-conviction judgment did not need to be reentered because a timely appeal had been filed in the post-conviction case, that the reentry was exclusively for the criminal judgment of conviction and was simply noted and filed in the post-conviction case as well.

Subsequently on February 25, 2009,[2] through a third attorney, Cook filed a second I.R.C.P. 60(b) motion to set aside the judgment in the post-conviction case on grounds of new evidence, excusable neglect, "misrepresentation by the Office of the Attorney General in the Court as to what the Victims would have said if allowed to testify at prior proceedings," and "other reasons pursuant to I.R.C.P. Rule 60(b) which are applicable in that the new evidence would allow the victims to receive restitution and to not allow the same would magnify the harm and injury that the victims have incurred." The motion requested that the court suspend the unserved portion of Cook's sentences to allow him to work and pay restitution to his victims. Cook thereafter filed a motion asking the court to treat this second I.R.C.P. 60(b) motion as a successive post-conviction petition. The district court held that this second I.R.C.P. 60(b) motion was timely as it could be treated as an amendment to the I.R.C.P. 60(b) motion filed on June 8, 2007, which was itself timely, and held that it would treat certain claims as successive post-conviction claims. After a hearing, the court granted Cook relief and stated that its decision did

> not impact [Cook's] sentencing as imposed by the Court of Appeals. It is a motion regarding his Rule 35 motion, which was a plea for leniency regarding the imposed sentence. Therefore, there is no need to vacate the conviction. There is no need to vacate the sentence. Instead, the Rule 35 motion is now granted . . . .

Pursuant to this decision in the post-conviction proceedings, the district court entered an amended judgment of conviction in Cook's criminal case, suspending the balance of Cook's sentence and placing him on supervised probation for thirty-seven years.

The State appeals both from the amended judgment of conviction and the court's decision on Cook's I.R.C.P. 60(b) motion. On the State's motion, the district court's decisions were stayed pending the disposition of this appeal. The State argues that the district court lacked authority to consider Cook's I.R.C.P. 60(b) motion because it was untimely, that the district court lacked authority to convert Cook's motion to a successive post-conviction petition, and even if the court had authority to do so, such a petition would have been untimely. Furthermore, even if the district court did have authority to consider the merits of Cook's claims, the State

---

[2]    The State received a copy of Cook's I.R.C.P. 60(b) motion on February 5, 2009, and responded on February 19. However, the district court's registry of actions indicates that Cook's motion was not filed until February 25, 2009.

4

argues, it erred in granting relief because neither the information concerning Cook's employment opportunity and related restitution plan, nor the contention that the victims would support a viable restitution plan, is new evidence. Additionally, the State contends that Cook failed to show that his two previous attorneys had been ineffective.

## II.

## ANALYSIS

### A. Timeliness and Treatment of Certain Claims as Successive Post-Conviction Petition Claims

The parties make numerous arguments and counterarguments regarding the propriety of the district court's determination that Cook's I.R.C.P. 60(b) motions were properly and timely filed and the district court's determination to treat the Rule 60(b) motions, in part, as a successive post-conviction action. We find it unnecessary to address this plethora of procedural issues because, even assuming that Cook's various claims were timely presented as either requests for I.R.C.P. 60(b) relief or as claims in a successive post-conviction action, we conclude the court erred in granting relief on the merits.

### B. The District Court Erred in Holding That Cook Was Entitled to Relief

#### 1. Rule 60(b) claims

A party may seek relief from a final judgment based on mistake, surprise, or excusable neglect; newly discovered evidence; fraud; misrepresentation or misconduct; a void or satisfied judgment; or any other reason justifying relief from judgment. I.R.C.P. 60(b); *Palmer v. Spain*, 138 Idaho 798, 802, 69 P.3d 1059, 1063 (2003); *Ross v. State*, 141 Idaho 670, 672, 115 P.3d 761, 763 (Ct. App. 2005). These grounds for relief are mutually exclusive "such that a ground for relief asserted, falling fairly under" one of the provisions cannot be granted under another. *See Eby v. State*, 148 Idaho 731, 736, 228 P.3d 998, 1003 (2010). The moving party must specify the above listed grounds upon which it is entitled to relief from judgment. *Palmer*, 138 Idaho at 802, 69 P.3d at 1063; *First Bank & Trust of Idaho v. Parker Bros., Inc.*, 112 Idaho 30, 32, 730 P.2d 950, 952 (1986). Rule 60(b) is not to be used as a mechanism to by-pass regular appellate procedure. *Ross*, 141 Idaho at 672, 115 P.3d at 763 (holding that movant failed to "provide any new information . . . that would justify relief pursuant to Rule 60(b)(6), but instead . . . essentially asked the district court to reverse itself and rule in Ross's favor . . . . This was an inappropriate use of Rule 60(b) as a disguised substitute for an appeal.").

The court is vested with discretion in determining whether to grant or deny an I.R.C.P. 60(b) motion. *Palmer*, 138 Idaho at 800, 69 P.3d at 1061; *Miller v. Haller*, 129 Idaho 345, 349, 924 P.2d 607, 611 (1996); *Viafax Corp. v. Stuckenbrock*, 134 Idaho 65, 69, 995 P.2d 835, 839 (Ct. App. 2000). However, its discretion is limited and may be granted only on a showing of "unique and compelling circumstances" justifying relief. *Palmer*, 138 Idaho at 802, 69 P.3d at 1063; *Miller*, 129 Idaho at 349, 924 P.2d at 611. When a trial court's discretionary decision is reviewed on appeal, the appellate court inquires into whether the lower court correctly perceived the issue as discretionary, acted within the boundaries of such discretion and consistently with any applicable legal standards, and reached its decision by an exercise of reason. *Palmer*, 138 Idaho at 800, 69 P.3d at 1061; *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

The district court analyzed Cook's "judicial error" and "victims' support" evidence and arguments as grounds for I.R.C.P. 60(b) relief. It determined that because Cook's judicial error claim was expressly addressed by this Court in Cook's consolidated appeal, Cook had failed to establish unique and compelling circumstances that could justify relief under Rule 60(b). Cook does not challenge this determination on appeal.[3] However, the court found that Cook's new evidence of the victims' support for his restitution plan, their need for restitution, the resulting harm if the victims did not receive restitution, and their constitutional right to restitution, constituted "unique and compelling circumstances" justifying relief under I.R.C.P. 60(b) because "this information was not presented at the Rule 35 hearing and likely would have impacted the outcome."

The State argues that support of victims is not a valid ground for granting I.R.C.P. 60(b) relief because victims' support does not demonstrate that the judgment in the original post-conviction case was erroneous. The State also argues that victims' support is not an appropriate ground because such support was known at the time the court entered its judgment in the post-conviction case.

---

[3] Though the district court discussed this claim of error, Cook's actual I.R.C.P. 60(b) motion did not make this claim. However, Cook's affidavit supporting the motion discussed the bias of the judge initially assigned to his cases at length. As claims for relief from judgment pursuant to I.R.C.P. 60(b) must be clearly stated in the motion, *see Palmer*, 138 Idaho at 802, 69 P.3d at 1063; *Parker Bros. Inc.*, 112 Idaho at 32, 730 P.2d at 952, the references to judicial bias in Cook's affidavit do not raise such a claim and this Court need not address it.

The district court did not specify which of the grounds for relief from a judgment delineated in Rule 60(b) was deemed satisfied by the affidavits of victims expressing their support for Cook's restitution plan. The court said merely that this evidence showed "unique and compelling circumstances" warranting Rule 60(b) relief. However, since this evidence could not conceivably demonstrate any of the grounds stated in Rule 60(b)(1), (3), (4), or (5), we presume the district court treated it as demonstrating either newly discovered evidence under Rule 60(b)(2) or as some other "reason justifying relief from the operation of the judgment" under Rule 60(b)(6). We conclude that Cook did not demonstrate a right to relief on either of these bases because his victims' support for his desire to be placed on parole, obtain employment, and begin making restitution was not newly discovered and was thoroughly considered by the district court in Cook's initial post-conviction action. During the initial post-conviction action, the court was presented with five letters stating that nine of the victims would support a viable restitution plan. Even though the court ultimately excluded these witnesses' testimony at the post-conviction evidentiary hearing, the State stipulated to the fact of victims' support expressed in those letters. The three victims' affidavits submitted in this action make essentially the same statements of support. Cook's Rule 60(b) motion presented no substantively different information concerning the victims' desires and financial interest than that which the district court considered before dismissing this claim in Cook's first post-conviction petition. Even without testimony from the victims, the court at Cook's Rule 35 hearing would have been well aware of the victims' compelling need for restitution of the money they lost in Cook's fraudulent scheme. Therefore, additional affidavits from victims did not amount to newly discovered evidence or other reason justifying relief from the judgment, and therefore could not have shown that either of these grounds amounted to "unique and compelling circumstances" as required for Rule 60(b) relief.

## 2. Post-Conviction claims

The district court characterized Cook's ineffective assistance of counsel and newly discovered evidence claims as components of a successive petition for post-conviction relief, but determined that it could reach the claim because Cook's initial post-conviction counsel had inadequately raised it. This is a permissible ground for a successive post-conviction petition. *Nguyen v. State*, 126 Idaho 494, 496, 887 P.2d 39, 41 (Ct. App. 1994). The court also determined that the supporting documentation for Cook's job opportunity--the affidavit of

Navajo Processing Products, Inc.'s (NProPI) president, tax returns, bank statements, and a CPA opinion--was newly discovered evidence. The court reasoned that it was new because, due to the deficiency of Cook's prior attorneys, it was not known at the time of the original post-conviction evidentiary hearing and, without effective assistance of counsel, could not have been known.

To prevail on an ineffective assistance of counsel claim, in a post-conviction action the defendant must show that the attorney's performance was deficient, and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Suits v. State*, 143 Idaho 160, 162, 139 P.3d 762, 764 (Ct. App. 2006). To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Id.* Bare assertions and speculation, unsupported by specific facts, do not make out a prima facie case for ineffective assistance of counsel. *Roman v. State*, 125 Idaho 644, 649, 873 P.2d 898, 903 (Ct. App. 1994).

Pursuant to Idaho Code § 19-4908, an applicant must raise all grounds for relief available to him in his original application for post-conviction relief or he waives it. I.C. § 19-4908; *Baker v. State*, 142 Idaho 411, 420, 128 P.3d 948, 957 (Ct. App. 2005). However, if a court finds a sufficient reason for not asserting or inadequately raising a ground for relief, the ground may be asserted in a subsequent application. I.C. § 19-4908; *Stuart v. State*, 118 Idaho 932, 933-34, 801 P.2d 1283, 1284-85 (1990); *Nguyen*, 126 Idaho at 496, 887 P.2d at 41. If as a result of deficient representation in the initial application the applicant was unable to fully present his grounds for post-conviction relief, a successive post-conviction petition may be brought with the ultimate focus of the second proceeding being "whether the second application has raised not merely a question of counsel's performance but substantive grounds for relief from the conviction and sentence." *Nguyen*, 126 Idaho at 496, 887 P.2d at 41 (quoting *Wolfe v. State*, 113 Idaho 337, 339, 743 P.2d 990, 992 (Ct. App. 1987)).

Given this governing law, in order to succeed on his successive petition here, Cook was required to demonstrate deficient performance by his prior attorneys at two levels. First, in order to establish a basis for post-conviction relief from the district court's denial of his Rule 35 motion for modification of his sentence, he had to prove that his attorney performed

8

incompetently in presenting and supporting the Rule 35 motion. Second, in order to show entitlement to present a successive post-conviction petition reasserting that same claim, Cook was required to show that his attorney in the first post-conviction action "inadequately raised" the claim. To meet this burden, Cook would have to show that there existed significant evidence regarding his employment opportunity and restitution plan that would have supported his Rule 35 motion that *could have been presented*, but was not presented, at that motion hearing nor in support of his first post-conviction action. That is, Cook bore the burden to show that such evidence existed at the time of his Rule 35 hearing in June 2003, and at the time of his first post-conviction hearing in July 2006. The evidence that Cook presented in support of his successive post-conviction petition does not so demonstrate, for his "new evidence" consists almost entirely of information that did not exist at the time of his Rule 35 motion and appears to refer to employment by a different prospective employer than that plan which was presented at the Rule 35 hearing. Finally, much of the evidence purporting to show the viability of Cook's employment plan appears to be irrelevant because it refers to entities other than the prospective employer.

To explain deficiencies in Cook's evidence, we begin by observing that his initial post-conviction counsel presented considerable evidence describing Cook's alleged job opportunity. The lower court was informed that Cook would be a "human resource consultant" for a company called "B&I Enterprises, LLC." At the outset of the first post-conviction action, B&I Enterprises was an as yet unorganized business entity whose principals planned to incorporate in Nevada when the first post-conviction job proposal was sent to the court in 2004. They later purchased an existing Georgia corporation which underwent a name change to form B&I. Under this first post-conviction plan, Cook was to train B&I's clients, hire new employees, participate in sales, and perform "other tasks as needed." B&I anticipated that it would have NProPI as a client and NProPI would then hire Cook in his capacity as a B&I employee to train its employees, manage personnel needs, and "do contract sales work." B&I proposed posting a $375,000 surety bond as collateral into a restitution trust to subsidize Cook's salary from corporate profits so that Cook could make "substantial" restitution payments, and to give Cook monthly bonuses of $165 dollars "per person in [Cook's] work load" which would also be applied to paying the victims' restitution. Though Cook's counsel did not present financial documentation concerning B&I's

9

financial viability, he could not have done so at that time because B&I was a newly-formed corporation or at least under new ownership.

Cook's new evidence does not demonstrate that there was additional information that his attorney could have presented to bolster and enhance the credibility of *this* job offer and restitution proposal. Rather, Cook's new evidence of a job opportunity has been highly speculative and ever-changing. For example, the company for which Cook proposes to work keeps changing. At the time of the I.C.R. 35 motion, it was Navajo Petroleum Products, Inc. (NPetPI), which appears to be a different entity than that in either post-conviction action, NProPI. It was B&I during the initial post-conviction action, who was to have NProPI as a client. Now, it appears that his job opportunity is to be an independent contractor directly for NProPI. However, all of the reliable-appearing financial documents are for the "affiliated" company of Speedy's Convenience, a truck stop, not NProPI, and they therefore do not show that NProPI is a legitimate or viable entity. Moreover, the financial documents for Speedy's Convenience and NProPI are for the financial conditions as they existed in 2006 and 2008, and therefore were not available to defense counsel at the Rule 35 hearing; in addition, neither Speedy's Convenience nor NProPI was a relevant entity at that time. It is therefore apparent that counsel could not have been deficient for failing to present to the court in 2003 or 2006 documents that did not yet exist for entities that were not relevant to the job opportunity.

Additionally, Cook's proposed job keeps changing. He was to be a salesman with NPetPI during the Rule 35 hearing, but a "human resource consultant" during the initial post-conviction action. Now, he is to be a broker of retail sales of fuel and wholesale purchases of crude oil, an economic research analyst, and a "property scout."

Just as Cook's new evidence does not show that his prior attorneys were deficient, it does not show that if the new evidence had been presented on Cook's Rule 35 motion, the district court then would have granted relief, and hence it does not show that Cook has been prejudiced by his attorney's alleged deficient performance. In Cook's first appeal, this Court affirmed the district court's holding in the first post-conviction action that Cook's trial counsel's decision not to offer witnesses or evidence concerning certain details of the employment plan can be considered reasonable given the continued highly speculative and ever-changing nature of the employment plan. We stated:

10

In regard to counsel's decision not to call these witnesses at either hearing, the court noted the plan appeared to be only "partially hatched" prior to the Rule 35 hearing and there was insufficient evidence that Cook's counsel had even been apprised of what existed of the plan prior to sentencing. Additionally, the court pointed out that counsel did, at the Rule 35 hearing, argue to the court that a restitution plan was in place to the extent counsel felt comfortable given the information he possessed. . . .

Upon a review of the record, we conclude the district court did not err in these findings of fact and its ultimate conclusion that counsel had not been ineffective. There was ample evidence for the district court to decide that counsel's choice not to offer witnesses or certain details in regard to the plan was reasonable given both the highly speculative nature of the proposed arrangement and the fact that it appears much of the evidence relied upon by Cook was not even communicated or readily available to counsel prior to the Rule 35 hearing.

*Cook*, 145 Idaho at 495-96, 180 P.3d at 534-35.

The new material that Cook presented in his successive post-conviction action offers nothing that would change that conclusion. Although Cook presented some financial documents trying to address the fatal concern of the district court that Cook's employer not just exist "on paper," this information is insufficient. Cook provided a 2007 tax return for "Speedy's Convenience, Inc.," a bank statement for July through August of 2008 for "Speedy's Convenience One, Inc.," and pictures of "Speedy's" truck stop. However, according to the affidavit of NProPI's president, Yolanda Denetchee, Cook will be working for NProPI. Though NProPI owns various gas stations, Speedy's truck stop is not one of them but is an independent corporation that is somehow "affiliated" with NProPI, though the record does not show exactly how. Therefore, information that shows "Speedy's Convenience, Inc." does not just exist "on paper," when that entity is not Cook's potential employer, does nothing to address the trial court's initial concern that Cook's employer not just exist "on paper."

Likewise, the submission of multiple pictures of NProPI's other "assets," such as gasoline stations and an oil refinery, does nothing to inform the court of NProPI's economic health and viability at relevant times. The pictures cannot indicate whether the equipment is leased, owned but subject to liens, or owned outright as an asset. The court was only given one financial document purporting to be a profit-loss breakdown of "all companys [sic]" from 2006. Unlike the bank statements and tax return submitted for Speedy's, which at least bear some indicia of reliability, this document bears no inherent indications of validity but is simply a computer print-out of a document that could have been created at any time by anyone for any

purpose. Furthermore, one group of the assets photographed did not belong to NProPI at all, but to "another closely related corporation." Again, the record contains no details of the nature of this relationship.

Denetchee attempted to answer in her affidavit the court's concern about why a company would be willing to compensate so abundantly a man in Cook's position. She detailed Cook's education and past employment experience qualifications and stated that NProPI "has a present need for Mr. Cook's services due to the current economic environment and the extreme price volatility of fuel." However, Denetchee's reasoning does not account for why Cook's is so uniquely qualified that the company has been unwilling to fill its need with someone else for almost six years. This and the fact that Cook made the acquaintance of a member of the management team while they were both incarcerated at a federal correctional institution in California, are suspicious circumstances that most likely would have led the district court to make the same decision it originally made on the Rule 35 motion.

The circumstances of the claimed employment opportunity remain suspicious, making the opportunity as unconvincing in its legitimacy as at the time of the I.C.R. 35 hearing. The job proposal provides no assurance that the proposed employer is even a legitimate and economically viable entity or that the proposed employment will last the entire period of probation; it could terminate nearly immediately after Cook's release from prison, leaving his victims as devoid of restitution payments as they are now. Therefore, it is unlikely that the district court which considered Cook's Rule 35 motion would have found this "new" information sufficient to overcome the court's skepticism about a plan that would release a defendant who committed multiple crimes of deceit. Cook has not shown that, even with the information he has now provided, which he claims counsel should have discovered, the result of his I.C.R. 35 motion would have been different.

In summary, the new evidence presented in support of Cook's successive post-conviction petition and Rule 60(b) motion does not show either deficient performance by his prior attorneys nor prejudice from their failure to present this new information at the original Rule 35 hearing or in the original post-conviction action. Accordingly, we hold that the district court erred in granting Cook post-conviction relief.

12

### III.

### CONCLUSION

The district court's order granting Cook relief from the judgment in the initial post-conviction action pursuant to I.R.C.P. 60(b), the district court's judgment granting relief in the successive post-conviction action, and the order reducing his sentences, are reversed.

Judge GUTIERREZ and Judge GRATTON **CONCUR.**